UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

D.O.H., a minor, by OSAMA HADDAD )
and HIND HADDAD, individually, and as his )
parents and natural guardians, )
)
        Plaintiffs, )
)
   v. ) Cause No. 2:11-cv-430
)
LAKE CENTRAL SCHOOL CORPORATION, )
*et al.*, )
)
        Defendants. )

## OPINION AND ORDER

This matter is before the court on the Motion for Sanctions [DE 39] filed by the

defendants on August 8, 2014, and the Motion for Leave to File Instanter Plaintiff's Surreply to

Defendants' Motion for Sanctions [DE 78] filed by the plaintiff, David Osama Haddad, on

January 12, 2015. For the following reasons, the Motion for Sanctions [DE 39] is **GRANTED**

**in part and DENIED in part**, and the Motion for Leave to File Instanter Plaintiff's Surreply to

Defendants' Motion for Sanctions [DE 78] is **DENIED**.

*Background*

The plaintiff, David Osama Haddad, initiated this lawsuit on November 16, 2011.

Haddad, a former Lake Central High School student, alleged that other students bullied and

harassed him, which led to physical and emotional damages. On July 31, 2012, the defendants

served Haddad with Interrogatories, Requests for Production, and Requests for Admission.

Haddad's responses were due on August 31, 2012, but he responded on November 13, 2012.

Requests for Production 5, 6, and 7 requested the production of Haddad's social media

profiles and information and music Haddad created in audio or video format. Haddad objected

to the above requests, and the parties engaged in multiple telephonic conferences and exchanged letters in an attempt to resolve the issue. When the parties could not reach an agreement, the defendants filed a Motion to Compel the requested information on September 13, 2013. This court granted in part and denied in part the Motion to Compel on January 15, 2014.

The January 15, 2014 opinion ordered Haddad to produce: (1) "any profiles, postings, or messages (including status updates, wall comments, causes joined, groups joined, activity streams, blog entries) and SNS applications for the relevant time period 'that reveal, refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state;'" (2) the music video called Y.G.R.N. and "all of [Haddad's] other music and music videos in audio and/or video format and a listing of all the songs and videos produced;" and (3) "a privilege log for any records not produced." On February 6, 2014, Haddad produced a portion of his Facebook account, the Y.R.G.N. video, and a list identifying his music in audio and video format. The defendants objected to the social media production because it failed to include wall comments, causes joined, groups joined, activity streams, messages, photographs, postings, and SNS applications and because Haddad failed to produce a privilege log.

On February 19, 2014, Haddad supplemented his discovery response by producing approximately eighty-five pages of redacted material that did not include all categories of information that Facebook permits its users to download. Haddad had given his Facebook username and password to his initial attorney when litigation began. He claimed that his prior attorney decided what portions of his Facebook account to produce and that his prior attorney had full access to his account.

On May 8, 2014, the defendants deposed Haddad and asked questions regarding his social media accounts. Haddad stated that he maintained a Facebook account in high school and that he was active through the date of the assault. Following the assault, he alleged that one of the assailants posted a vulgar comment on his profile, which Haddad promptly deleted. Haddad further indicated that he had not used his Facebook account since the date of the assault and that he understood that a court order barred him from deleting any information from his social media accounts.

During the deposition, the defendants presented an October 31, 2011 Facebook post that appeared to originate from Haddad's account and asked Haddad why the post was not included within his tendered Facebook production. Haddad answered that he did not recall whether he had deleted the post and admitted he may have deleted the post prior to the court order. Haddad answered each question regarding his social networking accounts and provided multiple websites and account names for his social media profiles.

After the deposition, defense counsel indicated their frustration and dissatisfaction regarding new information about Haddad's social media accounts and the amount of information produced from his Facebook profile. Shortly thereafter, Haddad's counsel withdrew, and the defendants contacted Haddad directly to request that he produce additional portions of his Facebook account. Haddad indicated that he had provided all the evidence in his possession to the defendants and that he assumed his prior counsel had produced all the relevant and responsive information. However, the defendants then filed their Motion for Sanctions on August 8, 2014.

On August 29, 2014, Haddad retained his present counsel, who conferred with the defendants in an attempt to resolve this matter. Specifically, she produced 1,415 pages of

Haddad's Facebook profile, responsive documents from his Twitter account, and confirmed that Haddad did not possess any additional music videos. On October 27, 2014, Haddad produced the above documents to the defendants. The defendants then requested a privilege log for the redacted social media documents, and Haddad responded that no information had been redacted for privilege but was redacted for relevance.

The defendants alleged that Haddad's Facebook production was deficient because the 1,415 page production was over seventy-five percent redacted and included approximately 1,000 fully redacted pages. Additionally, the defendants claimed that the October 27, 2014 discovery supplement failed to include all relevant information from Haddad's social networking accounts and to include deleted portions of his social networking accounts.

On January 12, 2015, Haddad filed a motion requesting leave to file a surreply. He claimed that the defendants' January 6, 2015 reply brief raised allegations regarding Haddad's Twitter account that had not previously been raised. Additionally, he alleged that the defendants filed a fifty-six page exhibit that they had possessed since November 15, 2011 but never was produced during discovery. Therefore, Haddad requested to file a surreply to address the alleged new argument and to address any "mis-impressions" from the defendants' reply brief. The defendants indicated that their initial Memorandum referenced Haddad's Twitter account on pages ten and eleven and that their reply brief referenced his Twitter account on pages eight and nine. Additionally, they stated that Haddad did not present a valid reason to file a surreply.

*Discussion*

Local Rule 7.1(a) permits parties to file an initiating brief, a response, and a reply, but it does not contemplate the filing of a surreply or response to the reply brief. The court generally does not permit litigants to file a surreply brief. ***Hall v. Forest River, Inc.***, 2008 WL 1774216, at

4

*n.3 (N.D. Ind. Apr. 15, 2009); **Runkle v. United States**, 1995 WL 452975, at *1 (N.D. Ind. May 9, 1995).  However, "[a] surreply brief is occasionally allowed when it raises or responds to some new issue or development in the law."  **Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.**, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009) (citing *Hall*, 2008 WL 1774216 at * n.3); *see* **Meraz-Camacho v. United States**, 417 Fed. App'x 558, 559 (7th Cir. 2011) ("The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief.").  The court's decision to permit or deny a surreply brief is reviewed under an abuse of discretion standard.  **Cleveland v. Porca Co.**, 38 F.3d 289, 297 (7th Cir. 1994).

Haddad alleged that the defendants raised allegations regarding his Twitter account for the first time in their reply brief.  Additionally, he indicated a need to file a surreply to correct any "mis-impressions" from the defendants' reply brief.  The defendants correctly indicated that they raised Haddad's failure to produce his Twitter account in their initial brief.  On pages ten and eleven, the defendants argued that Haddad had not complied with this court's January 15, 2014 order that required him to produce information from any social networking profiles.  Specifically, the defendants quoted their request that asked Haddad to produce his "'complete profile on Facebook, Twitter and MySpace . . .'" and to produce every video or photograph in his possession or control posted on "'YouTube, Facebook, Twitter, MySpace, or any other social media site . . .'"  Moreover, the defendants alleged that Haddad had not produced any social networking information except his Facebook profile.  Therefore, the defendants did not raise a new issue related to Haddad's Twitter account in their reply brief when they again alleged that he failed to produce posts from his Twitter profile.

Haddad also requested to file a surreply to correct any "mis-impressions" from the defendants' reply brief. Surreply briefs occasionally are allowed when they respond to a new issue or development in the law. "Mis-impressions" do not qualify as a new issue or development in the law. Therefore, Haddad has not presented a valid reason to file a surreply and the motion is **DENIED**.

Federal Rule of Civil Procedure 37(b)(2) gives the court authority to sanction a party for failing to comply with a court order and states in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve orderly disposition. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 47,111 S. Ct. 2123, 2132, 2134, 115 L. Ed. 2d 27 (1991) (explaining that the court has broad inherent powers to sanction a party); *Barnhill v. United States*, 11 F.2d 1360, 1367 (7th Cir. 1993).

The court should consider several factors when determining which sanctions to employ, including: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (citing *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). The court commits a legal error if it dismisses a suit after the first problem without exploring alternatives or explaining why alternative sanctions would not be worthwhile. *Sroga v. Huberman*, 722 F.3d 980, 982 (7th Cir. 2013). The sanctions must be proportional to the party's misconduct. *Collins v. Illinois*, 554 F.3d 693, 696–98 (7th Cir. 2009). The court measures this by weighing the proposed sanctions against the egregiousness of the party's conduct. *Barnhill*, 11 F.3d at 1368.

Dismissal is the most severe sanction and generally is applied only when a party has displayed exceptional misconduct or when less drastic sanctions have proven unavailing. *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014); *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007) (explaining that the Seventh Circuit has a well-established policy of favoring trial on the merits over default judgments); *Maynard v. Nygren*, 332 F.3d 462, 467–68 (7th Cir. 2003); *Danis v. USN Commc'ns, Inc.*, 2000 WL 1694325, at *33–*34 (N.D. Ill. Oct. 23, 2000) ("Because a default judgment deprives a party of a hearing on the merits, the harsh nature of this sanction should usually be employed only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party") (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958) (explaining that a party should be sanctioned with dismissal only in extreme situations where there is evidence of willfulness, bad faith, or fault by the noncomplying party)). When considering whether to employ this sanction, the court must "weigh not only the straw that finally broke the

camel's back, but all the straws that the recalcitrant party piled over the course of the lawsuit." ***Domanus***, 742 F.3d at 301. The court first must consider whether less severe sanctions will remedy the damage. ***Marrocco v. Gen. Motors***, 966 F.2d 220, 223–24 (7th Cir. 1992).

The Seventh Circuit has employed two different standards for determining whether dismissal is an appropriate sanction. When assessing dismissal for want of prosecution or the failure to comply with a court order, the court must consider whether there has been a clear record of delay or contumacious conduct or whether less drastic sanctions have been unavailing. ***Domanus***, 742 F.3d at 301; ***Maynard***, 332 F.3d at 468–69; ***Large v. Mobile Tool Int'l, Inc.***, 2008 WL 2116967, at *7 (N.D. Ind. May 20, 2008) ("[C]ontumacious conduct merits strong sanctions, and when the court uses its inherent power to root out contumacious conduct, no showing of willfulness, bad faith, fault or even prejudice is required."). "A slightly different requirement-a finding of willfulness, bad faith or fault-comes into play when dismissals are used specifically as a discovery sanction under Fed.R.Civ.P. 37." ***Maynard***, 332 F.3d at 467–68 (citing *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001); *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046–47 (7th Cir. 2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court)). "That is, even without 'a clear record of delay, contumacious conduct or prior failed sanctions,' a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate." ***Maynard***, 332 F.3d at 468; *see* ***Melendez v. Ill. Bell Co.***, 79 F.3d 661, 671 (7th Cir. 1996) ("Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant.").

Bad faith is "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco*, 966 F.2d at 224; *see Maynard*, 332 F.3d at 470 (explaining that bad faith is exhibited where a party fails to comply with a court order or provides false or misleading responses). Similarly, fault does not mean the party's subjective motivation, but rather "the reasonableness of the conduct─or lack thereof─which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224; *Langley*, 107 F.3d at 514 (citing *Marrocco*, 966 F.2d at 224). The Seventh Circuit requires clear and convincing evidence of the discovery abuse to justify a default judgment because of the harsh nature of the penalty and the court's policy of favoring trial on the merits. *Maynard*, 332 F.3d at 468 ("[C]onsidering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case."); *Larson v. Bank One Corp.*, 2005 WL 4652509, at *9 (N.D. Ill. Aug. 18, 2005) (explaining that a default judgment requires clear and convincing evidence of the sanctionable conduct, although an issue-related sanction requires only a preponderance of the evidence).

The defendants have requested the court to dismiss this matter or in the alternative to impose lesser sanctions on Haddad. In support of that request, the defendants have presented two arguments. First, that Haddad failed to comply with this court's January 15, 2014 order and second, that he destroyed or altered relevant social networking information. To prove that Haddad violated this court's January 15, 2014 order, the defendants have claimed that his prior attorney's responses violated the order, that his current counsel provided a heavily redacted Facebook production and failed to produce other social networking accounts, and that Haddad has failed to produce a privilege log.

First, the defendants have alleged that Haddad's prior counsel provided Facebook profile productions that were incomplete and deficient. Haddad's prior counsel produced his Facebook profile on February 6, 2014 and February 19, 2014. On June 10, 2014, this court granted the withdrawal of Haddad's prior counsel, and approximately one month later the defendants contacted Haddad directly to rectify the discovery dispute. Haddad indicated that he had produced all the documents in his possession and did not supplement his production. However, on August 29, 2014, Haddad retained his current counsel, who has attempted to resolve this discovery dispute by supplementing his discovery response on October 27, 2014.

Haddad admitted that his former counsel violated the January 15, 2014 order by failing to produce his complete Facebook profile but argued that he should not be held responsible for his former counsel's misconduct. Haddad gave full access to his account to his prior counsel. He claimed that he was unaware that his prior counsel did not produce his entire profile and that any delays in complying with the order were not his fault. Furthermore, he argued that he fully complied with the order with his discovery supplement and that he should not be punished for his prior counsel's actions. Haddad cited non-binding Second Circuit case law that held "[t]he rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions." *Ransmeier v. Mariani*, 718 F.3d 64, 71 (2d Cir. 2013).

A court may issue sanctions when a party or a party's officer fails to comply with a court order to provide or permit discovery. **Federal Rule of Civil Procedure 37(b)(2)(A)**. The court must order the disobedient party, his attorney, or both to pay the reasonable expenses and attorney's fees associated with the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust. **Federal Rule of Civil Procedure 37(b)(2)(C)**. Although Haddad argued there was no precedent for holding a plaintiff liable for

the conduct of his attorney, the Supreme Court and the Seventh Circuit have addressed this issue

when dismissing a party's case based on his attorney's conduct.

> There is certainly no merit to the contention that dismissal of
> petitioner's claim because of his counsel's unexcused conduct
> imposes an unjust penalty on the client. Petitioner voluntarily
> chose this attorney as his representation in the action, and he
> cannot now avoid the consequences of the acts or omissions of this
> freely selected agent. Any other notion would be wholly
> inconsistent with our system of representative litigation, in which
> each party is deemed bound by the acts of his lawyer-agent . . . .

*Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962); *see*

*Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 608–09 (7th Cir. 1986) (citing *Link* and

dismissing the plaintiff's case for his attorney's misconduct); *see also Comiskey v. JFTJ Corp.*,

989 F.2d 1007, 1009–10 (8th Cir. 1993) (sanctioning the plaintiff for failing to comply with

court orders and discovery requests, although the plaintiff argued the failure to obey was the sole

fault of its prior counsel); *Reddick v. Bloomingdale Police Officers*, 2003 WL 1733560, at *17

(N.D. Ill. Apr. 1, 2003) ("[Plaintiff] and its present counsel can not avoid the consequences of

their discovery failures by blaming [plaintiff's] first set of attorneys.").

> And if an attorney's conduct falls substantially below what is
> reasonable under the circumstances, the client's remedy is against
> the attorney in a suit for malpractice. But keeping this suit alive
> merely because plaintiff should not be penalized for the omissions
> of his own attorney would be visiting the sins of plaintiff's lawyer
> upon the defendant.

*Link*, 370 U.S. at n.10; *see Reynolds v. Gen. Revenue Corp.*, 2013 WL 2456070, at *2–*3 (S.D.

Ind. June 6, 2013) (acknowledging that the misconduct was counsel's fault, but dismissing the

action because the plaintiff "must accept responsibility for her attorney's actions"). Although

Haddad argued he should not be liable for the February 6, 2014 and February 19, 2014 Facebook

productions based on his prior counsel's misconduct, there is precedent to hold him responsible

for his attorney's conduct. Haddad voluntarily chose his prior counsel and cannot avoid the consequences for his attorney's discovery failures. Therefore, this court finds Haddad responsible for the February 6, 2014 and February 19, 2014 discovery productions that violated this court's January 15, 2014 order and discusses the appropriate sanctions later in this order.

Second, the defendants have claimed that Haddad violated the January 15, 2014 order because his current counsel's October 27, 2014 discovery supplement failed to rectify the present issues. On October 27, 2014, Haddad supplemented his discovery and produced 1,415 pages of social networking information. Haddad has claimed that the supplement included all the relevant social media information and that he has fully complied with this court's January 15, 2014 order. However, the defendants alleged that the Facebook production did not contain all of the relevant profile posts and comments. In support of that allegation, the defendants listed specific posts and comments that were produced in Haddad's initial production but were missing from his supplement.

The January 15, 2014 order required Haddad to produce any social networking information that reveals, refers, or relates to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state. Some of the missing posts included "damn . . . I just noticed teenagers are cruel. If they don't like what you like, it supposedly makes you wrong?" and "To all the people that don't believe in me: fuck you." The court finds that the missing posts are relevant and within the scope of the January 15, 2014 order. Although the defendants demonstrated that relevant information was not included in the October 27, 2014 discovery supplement, they have not demonstrated that Haddad intentionally withheld the

information in bad faith or that he withheld relevant information that was not produced in either the initial Facebook productions or the supplement.

The defendants also indicated that the supplement did not comply because it failed to include all of his other social networking information. Haddad's discovery supplement contained five pages of his Twitter profile. However, the defendants located approximately fifty-six pages through their own efforts and listed specific relevant Tweets that were missing from Haddad's supplement. Although Haddad has claimed that he produced all of his relevant Twitter information, that the defendants discovered an additional fifty-one pages of information demonstrates that he failed to produce the entire profile. Haddad did not produce fifty-six pages of his Twitter profile that he redacted for relevance, but rather only produced five pages that he claimed was the entire profile. Therefore, the court cannot find that he complied with the January 15, 2014 order, which ordered him to produce all the relevant information from his Twitter profile. The court finds that Haddad's supplement did not fully comply with the January 15, 2014 order because it failed to include all his relevant social networking information.

Third, the defendants claimed that Haddad violated the January 15, 2014 order by failing to produce a privilege log. The defendants claimed that Haddad's October 27, 2014 discovery supplement was approximately seventy-five percent redacted and alleged that Haddad withheld relevant discovery. Haddad indicated that he did not withhold any information based on privilege and therefore, stated a privilege log was unnecessary. He indicated that the redacted information was irrelevant to this matter and covered topics broader than this litigation. The defendants argued that a log is necessary to prove the redacted information was irrelevant because Haddad unilaterally determined what information to redact.

The initial dispute leading to this court ordering Haddad to produce a privilege log focused on the relevance of Haddad's social networking information. The parties disputed whether the entirety of Haddad's social networking profiles was relevant under Rule 26. This court then limited the scope of relevance for Haddad's social networking profiles and ordered him to produce a privilege log for any information not produced. Although the court labeled it a "privilege log," the order intended for Haddad to produce a log of any social networking information he withheld as outside the scope of relevance. Therefore, Haddad is ordered to produce a log for any information withheld as outside the scope of relevance.

Next, the defendants alleged that Haddad destroyed or altered his social networking information. A party has a duty to preserve evidence when it knows, or should have known, that litigation was imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). The duty to preserve evidence is broad, encompassing any relevant evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action. *Danis v. USN Commc'ns, Inc.*, 2000 WL 1694325, at *32 (N.D. Ill. Oct. 20, 2000); *Larson v. Bank One Corp.*, 2005 WL 4652509, at *10–*11 (N.D. Ill. Aug. 18, 2005); *In re Kmart*, 371 B.R. 823, 842 (N.D. Ill. 2007). At the latest, this duty attaches when the plaintiff informs the defendant of his potential claim. *Trask-Morton*, 534 F.3d at 681 (explaining that Motel 6 was on notice of the claim when it received the plaintiff's demand letter); *Northington v. H & M Int'l*, 2011 WL 663055, at *6 (N.D. Ill. Jan. 12, 2011) (citing *Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010) (finding that employer's duty to preserve relevant documents arose at the time it learned employee had filed EEOC charges); *Wells v. Berger, Newmark & Fenchel, P.C.*, 2008 WL 4365972, at *7 (N.D. Ill. Mar. 18, 2008) (holding that employer's duty to preserve sexually explicit emails began when employer received notice of

14

sexual harassment charge filed by employee with state department of human rights)). Once a party has notice of the threat of litigation, and therefore the duty to preserve evidence that may be sought during discovery, the party should implement a plan to find and preserve relevant evidence. *Danis*, 2000 WL 1694325 at \*32; *Kmart*, 371 B.R. at 846 ("[T]he 'duty to preserve documents in the face of pending litigation is not a passive obligation,' but must be 'discharged actively.'"). Failure to abide by this duty may result in sanctions when it was done willfully, in bad faith, or when the non-compliant party was at fault. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 2779, 49 L. Ed. 2d 747 (1976); *Trask-Morton*, 534 F.3d at 681; *Danis*, 2011 WL 2039588 at \*33–\*34.

Solely the inability to produce or the destruction of a document does not warrant an inference that the document was adverse to the party's case. *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). In order to draw an adverse inference from the destruction of evidence, the court must find that the destroying party "intentionally destroyed the documents in bad faith." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (citing *Park*, 297 F.3d at 615). "Thus, '[t]he crucial element is not that evidence was destroyed but rather the reason for the destruction.'" *Park*, 297 F.3d at 615 (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982)). "A document is destroyed in bad faith if it is destroyed 'for the purpose of hiding adverse information.'" *Faas*, 532 F.3d at 644 (quoting *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (internal citation omitted)).

The defendants claimed that Haddad's duty to preserve his social networking information began on November 8, 2011 when he foresaw that litigation was imminent. Alternatively, they indicated that his duty began when he filed a motion for a temporary restraining order on November 14, 2011. However, they alleged that Haddad failed to produce an October 31, 2011

Facebook status update and comments that named and harassed one of the students involved in the assault. During his deposition, Haddad stated that he did not recall deleting the post, that he had not been active on Facebook for two years, and that he knew of his duty to preserve evidence. The defendants alleged that the above post existed after Haddad filed this action, that it was detrimental to his claims, and that he willfully destroyed the evidence.

The defendants also alleged that Haddad failed to preserve relevant comments made on his status updates. The defendants compared Haddad's initial Facebook production with his supplement and determined that many comments no longer exist and were deleted or concealed. Additionally, the defendants alleged that Haddad either deleted or concealed portions of his Twitter account. Furthermore, the defendants argued that Haddad failed to produce "Like a G6 Remix," a music video he created, because he claimed he never had possession of the video. However, Haddad testified that he posted the video on YouTube during his deposition. Based on the alleged deleted evidence, the defendants requested a dismissal or an adverse inference against Haddad for the missing evidence.

In his deposition, Haddad admitted that he deleted some posts from his Facebook account on the day of the assault and acknowledged that he possibly deleted other posts prior to the court order requiring the preservation of evidence. Haddad argued that the defendants failed to show that any documents were destroyed in bad faith. Additionally, he claimed that the defendants were not prejudiced from the deletion of any Facebook posts.

The defendants demonstrated that Haddad had a duty to preserve evidence dating to November 2011 when he knew that litigation was imminent and had filed this pending action. Additionally, they showed that Haddad deleted some Facebook posts and could not produce the "Like a G6 Remix" music video. However, the court does not find that Haddad deleted any

information in bad faith as required for an adverse inference. The defendants have not indicated that Haddad destroyed any evidence for the purpose of hiding adverse information. Rather, he admitted deleting information before his duty to preserve evidence was established and only acknowledged it was possible that he deleted information after the duty arose. Although the defendants have alleged that Haddad deleted or concealed comments on his Facebook status update, they have not shown whether Haddad deleted other users' comments or whether those other users deleted their own comments. Additionally, the court does not find that Haddad deleted any social networking information to hide adverse evidence, but potentially deleted vulgar comments to avoid embarrassment or further harassment. Therefore, the court does not draw an adverse inference against Haddad for any deleted social networking information.

The defendants alleged that Haddad failed to produce the "Like a G6 Remix" music video. "A party need not produce documents or tangible things that are not in existence or within its control. It is sufficient that the discovered party respond by saying that a document or tangible thing is not in existence." *Hagemeyer N. Am., Inc. v. Gateway Data Scis., Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (citations omitted). When a party denies "that it has possession, custody or control of documents, the requesting party must make an adequate showing to overcome this assertion." *Hagemeyer*, 222 F.R.D. at 598.

Haddad stated that a former friend produced the video and posted it to his personal YouTube account. Haddad indicated that he no longer is in contact with his former friend and that he never had possession of the video. The defendants claimed that Haddad admitted to posting the video on YouTube during his deposition. Although Haddad said he posted the video to YouTube during his deposition, it is ambiguous whether Haddad posted the video to YouTube on his personal account or whether he answered affirmatively to indicate that someone had

posted the video to YouTube. The court finds that the defendants did not make an adequate showing to overcome the assertion that a former friend had possession of the video and posted it to his personal YouTube account.

Based on the above findings, the court must issue the appropriate sanctions against Haddad. The defendants requested the court to dismiss this matter or in the alternative to issue lesser sanctions. This court has not issued sanctions previously and does not find that Haddad has displayed exceptional misconduct warranting dismissal without first issuing lesser sanctions. This court found Haddad responsible for his prior counsel's deficient Facebook productions on February 6, 2014 and February 19, 2014 and for his current counsel's deficient Twitter production within his October 27, 2014 discovery supplement. Additionally, this court found that Haddad violated the January 15, 2014 order by failing to produce a log for the withheld social networking information. Therefore, Haddad is **ORDERED** to produce the entirety of his Twitter profile with redactions for privilege and relevance. Haddad is **ORDERED** to produce a log for any social networking information redacted or withheld as outside the scope of relevance or privileged. Haddad is **ORDERED** to pay the reasonable expenses and attorney's fees associated with this discovery dispute. The defendants are **DIRECTED** to file an affidavit setting forth their reasonable expenses and attorney's fees associated with this discovery dispute within fifteen days of this order. The court does not find Haddad responsible for any expenses or attorney's fees associated with redeposing witnesses.

Based on the foregoing reasons, the Motion for Sanctions [DE 39] filed by the defendants is **GRANTED in part and DENIED in part**, and the Motion for Leave to File Instanter Plaintiff's Surreply to Defendants' Motion for Sanctions [DE 78] filed by Haddad, is **DENIED**.

ENTERED this 20th day of February, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge