UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

D.O.H., a minor, by OSAMA HADDAD          )
and HIND HADDAD, individually, and as his )
parents and natural guardians,            )
                                          )
              Plaintiffs,                 )
                                          )
       v.                                 ) Cause No. 2:11-cv-430
                                          )
LAKE CENTRAL SCHOOL CORPORATION,          )
*et al.*,                                 )
                                          )
              Defendants.                 )

**OPINION AND ORDER**

This matter is before the court on the Motion for Sanctions [DE 80] filed by the plaintiff,

David Osama Haddad, on January 26, 2015, and the Motion to Compel Production of Student

Affidavits and Questionnaires [DE 88] filed by Haddad on February 16, 2015. For the following

reasons, the Motion for Sanctions [DE 80] is **DENIED**, and the Motion to Compel Production of

Student Affidavits and Questionnaires [DE 88] is **DENIED**.

*Background*

The plaintiff, David Osama Haddad, initiated this lawsuit on November 16, 2011.

Haddad, a former Lake Central High School student, alleged that other students bullied and

harassed him, which led to physical and emotional damages. On August 8, 2014, the defendants

filed a Motion for Sanctions [DE 39], which alleged that Haddad had failed to produce his entire

Twitter profile. Within their Motion for Sanctions [DE 39], the defendants indicated that

Haddad had produced only five pages of his Twitter profile. In their reply brief, the defendants

produced fifty-six pages of Haddad's Twitter profile [DE 77-6] to demonstrate that Haddad

failed to produce his entire profile.

On February 20, 2015, this court granted in part and denied in part the defendants'

Motion for Sanctions [DE 39]. Specifically related to the present issue, the court found that

Haddad had failed to produce his entire Twitter profile and ordered him to produce that profile

with redactions for privilege and relevance and to pay the reasonable expenses associated with

that discovery dispute. Prior to the February 20, 2015 order, Haddad filed this present Motion

for Sanctions [DE 80] and argued that the defendants filed the fifty-six pages of his Twitter

profile without first disclosing the documents to him in violation of Federal Rule of Civil

Procedure 37(c).

The defendants' Twitter production included an affidavit signed by the defendant, Robert

McDermott, that stated he acquired the fifty-six pages of Haddad's Twitter profile on or about

November 15, 2011. Haddad claimed that the defendants had not disclosed the fifty-six pages

before filing their reply brief or mentioned it to his counsel. Upon seeing the fifty-six pages,

Haddad's counsel contacted the defense counsel to request that the defendants withdraw their

Motion for Sanctions [DE 39] because the defendants had made accusations with unclean hands.

However, the defendants rejected that request and a second attempt before Haddad filed his

Motion for Sanctions [DE 80].

Haddad also has claimed that the defendants withheld seventy-three pages of relevant

documents for more than three years. The documents included eighteen pages of notes created

by the defendant, Dr. Lawrence Veracco, thirty-one pages of notes created by Lake Central High

School Assistant Principal Martin Freeman, and statements obtained from Lake Central High

School students after the November 8, 2011 assault.

After Haddad filed his complaint in state court, the defendants indicated that they

conducted an investigation to prepare a defense. As part of that investigation, Lake Central

administrators obtained written statements from students and took notes during student interviews. McDermott, Principal of Lake Central High School, prepared a memorandum about the interviews, compiled documents, and placed documents into a master file. However, defense counsel admitted that some administrators maintained documents outside of the master file and that counsel was unaware of that practice until November 2014. As part of the investigation, McDermott viewed and printed Haddad's publicly available Twitter profile but maintained it in a personal file rather than the master file. On June 30, 2012, McDermott resigned from the Lake Central School Corporation and did not leave his personal file regarding the investigation. Defense counsel claimed that they were unaware that McDermott had Haddad's Twitter profile until Haddad issued individual discovery to him two years later.

On August 1, 2012, the defendants produced the discoverable portion of the master file along with a privilege log to Haddad. Initially, the defendants identified the referenced students by initials because they were minors, but they disclosed the students' names on January 17, 2013. Additionally, on November 6, 2014, they identified each person present during the interviews and the date that each statement was obtained.

On October 22, 2014, Haddad sent a second set of interrogatories and requests for production to Lake Central School Corporation and his first set of interrogatories to Veracco, McDermott, defendant, Sean Begley, and defendant, George Baranowski. The defendants stated that was the first time that Haddad had requested discovery from the individual defendants. Defense counsel claimed that he learned for the first time that information was missing from the master file when he contacted the individual defendants to prepare their discovery responses. Specifically, he learned that McDermott had a copy of Haddad's Twitter profile on November 18, 2014. On December 17, 2014, the defendants responded to the discovery requests and

produced Haddad's Twitter profile, the notes of Veracco and Freeman, Freeman's handwritten notes on his desk calendar, and a privilege log. Twenty days later the defendants filed their reply brief, which included Haddad's Twitter profile.

Although the defendants disclosed the names of students that produced written affidavits and answered questionnaires, Haddad claimed that the defendants have withheld the actual statements on the basis of the work product doctrine and the Family Educational Rights and Privacy Act. Haddad has requested that the defendants produce the affidavits and questionnaires multiple times, but the defendants have rejected each request. Haddad then attempted to contact the witnesses but could only reach four of the students. Three of the witnesses did not remember the content of their statements, two additional witnesses have moved out of state without forwarding information, and another has left the country until Christmas of 2015.

Haddad did not file a Local Rule 37.1 certification along with his Motion for Sanctions [DE 80]. However, Haddad indicated that the parties exchanged letters on January 7, 2015 and January 8, 2015 regarding that dispute. The defendants indicated that Haddad's counsel called defense counsel on January 29, 2014 after he had filed his Motion for Sanctions. Haddad did file a Local Rule 37.1 certification with his Motion to Compel indicating that he had attempted to resolve that discovery dispute with the defendants.

*Discussion*

"A party filing any discovery motion must file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." **N.D. Ind. L.R. 37-1(a)**. The certification must include the date, time, and place of any conference or attempted conference and the names

of any participating parties. **N.D. Ind. L.R. 37-1(a)(1) and (2)**. The court may deny any motion that failed to include the required certification. **N.D. Ind. L.R. 37-1(b)**.

The defendants have indicated that Haddad failed to file a certification pursuant to Local Rule 37-1 and have argued that the court should deny the motion outright. Additionally, they have claimed that Haddad did not attempt to resolve the dispute in good faith because he sent one letter and made one phone call after filing his Motion for Sanctions. However, Haddad has argued that the court has discretion to overlook the failure to file a certification when the party substantially complied with the necessary substance of the certificate. *Mayes v. City of Hammond, Ind.*, 2006 WL 2037379, at *5 n.3 (N.D. Ind. July 18, 2006); *see Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 335 (N.D. Ind. 2004) (finding the plaintiffs' lack of compliance not fatal when the motion reflected an effort to confer with the defendants).

Although Haddad did not file a certification pursuant to Local Rule 37-1, the parties did exchange letters in an attempt to resolve the dispute. Furthermore, the briefs demonstrate that the parties will not reach a mutual agreement on the Motion for Sanctions [DE 80]. Therefore, the court will address the underlying issues rather than denying Haddad's motion pursuant to Local Rule 37-1 and simply delaying a resolution of this dispute. *See Felling v. Knight*, 2001 WL 1782361, at *1 (S.D. Ind. Dec. 21, 2001) ("[T]he briefs leave little doubt the parties will not reach mutual agreement on the issues raised. Therefore, the court will address the underlying issues rather than deny Knight's motion solely on the basis of a procedural shortcoming. To hold otherwise would do little other than delay resolution of these issues . . . .").

First, Haddad has argued that the defendants failed to disclose information in violation of Rule 26(a) and (e) and has requested sanctions for those violations. Without awaiting a discovery request, a party must provide to the other parties

> a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

**Federal Rule of Civil Procedure 26(a)(1)(A)(ii)**. "A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate . . . ." **Federal Rule of Civil Procedure 26(a)(1)(C)**. "A party must make its initial disclosures based on the information then reasonably available to it . . .[and] is not excused from making its disclosures because it has not fully investigated the case . . . ." **Federal Rule of Civil Procedure 26(a)(1)(E)**. Additionally, a party has a duty to supplement or correct a Rule 26(a) disclosure.

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

**Federal Rule of Civil Procedure 26(e)(1)(A) and (B)**.

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." **Federal Rule of Civil Procedure 37(c)(1)**. Rule 37(c)(1) requires the exclusion of non-disclosed evidence unless non-disclosure was justified or harmless. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). The district court has broad discretion to determine whether a Rule 26(a) violation was justified

or harmless.  ***Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.***, 100 F.3d 1353, 1363

(7th Cir. 1996).  Courts should use the following factors when making this determination:  "(1)

the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the

party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or

willfulness involved in not disclosing the evidence at an earlier date."  ***David v. Caterpillar, Inc.***,

324 F.3d 851, 857 (7th Cir. 2003); *see* ***Tribble v. Evangelides***, 670 F.3d 753, 760 (7th Cir. 2012)

(citing ***David***).

However, in addition to or instead of excluding the non-disclosed evidence, the court

may order the violating party to pay the reasonable expenses, including attorney's fees, caused

by the failure, inform the jury of the party's failure, and impose appropriate sanctions, including

any listed in Rule 37(b)(2)(A).  **Federal Rule of Civil Procedure 37(c)(1)(A)–(C)**.  Federal

Rule of Civil Procedure 37(b)(2) gives the court authority to sanction a party for failing to

comply with a court order and states in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order.  If a party or a party's
> officer, director, or managing agent--or a witness designated under
> Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or
> permit discovery, including an order under Rule 26(f), 35, or 37(a),
> the court where the action is pending may issue further just orders.
> They may include the following:
> (i) directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the action,
> as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order
> except an order to submit to a physical or mental examination.

The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve orderly disposition. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 47, 111 S. Ct. 2123, 2132, 2134, 115 L. Ed. 2d 27 (1991) (explaining that the court has broad inherent powers to sanction a party); *Barnhill v. United States*, 11 F.2d 1360, 1367 (7th Cir. 1993).

The court should consider several factors when determining which sanctions to employ, including: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (citing *Williams v. Chi. Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). The court commits a legal error if it dismisses a suit after the first problem without exploring alternatives or explaining why alternative sanctions would not be worthwhile. *Sroga v. Huberman*, 722 F.3d 980, 982 (7th Cir. 2013). The sanctions must be proportional to the party's misconduct. *Collins v. Illinois*, 554 F.3d 693, 696–98 (7th Cir. 2009). The court measures this by weighing the proposed sanctions against the egregiousness of the party's conduct. *Barnhill*, 11 F.3d 1368.

Haddad has requested sanctions pursuant to Rule 37(c)(1) because the defendants violated Rule 26(a) and (e). First, he argued that the defendants violated Rule 26(a) and (e) by failing to produce fifty-six pages of his own Twitter profile. Haddad claimed that the defendants did not produce the Twitter profile until they included it in their reply brief to their Motion for Sanctions [DE 39]. Additionally, he stated that McDermott had possessed the Twitter profile since November 2011 and that the defendants were required to disclose the profile pursuant to Rule 26(a) and in response to Haddad's First Set of Requests for Production.

First, the defendants have argued that they were not required to disclose Haddad's Twitter profile under Rule 26(a) because they did not intend to use it. *See* **Federal Rule of Civil Procedure 26** advisory committee's notes (2000) ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."). The defendants admitted that McDermott acquired the Twitter profile in November 2011 but claimed they did not initially intend to use it because defense counsel did not learn of its existence until November 18, 2014. The court cannot find that the defendants intended to use the Twitter profile at the time of their initial Rule 26(a) disclosure when defense counsel did not learn of the documents' existence until after Haddad sent his first set of interrogatories to the individual defendants on October 22, 2014. To further support that defense counsel did not know of the documents' existence, McDermott did not place the Twitter profile in the master file containing the School Corporation's investigation documents but maintained it in a personal file that he took with him following his resignation effective June 30, 2012. Although McDermott is a named defendant in this matter, the court cannot find that the defendants intended to use the Twitter profile because defense counsel did not know it existed. Therefore, the court does not find that the defendants violated Rule 26(a) by failing to disclose the Twitter profile within their initial disclosure.

Moreover, the defendants did not violate Rule 26(e) because they supplemented their initial disclosure by producing the Twitter profile once they intended to use it. *See* **Federal Rule of Civil Procedure 26** advisory committee's notes (2000) ("As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use."). As stated above, defense counsel learned about the Twitter profile on November 18, 2014. Although Haddad has claimed that the defendants first

disclosed his Twitter profile within their reply brief, the defendants indicated that they produced

the profile on December 17, 2014, twenty days before filing their reply brief. Furthermore, the

parties agreed on November 24, 2014 that the defendants could respond to the discovery requests

on December 17, 2014. Because the defendants supplemented their initial disclosure with the

Twitter profile within one month of defense counsel learning of the documents' existence, the

court finds that the defendants timely supplemented their initial disclosure pursuant to Rule

26(e).

Even if the court had found that the defendants violated Rule 26(a) or (e) by failing to

disclose the Twitter profile, sanctions would be inappropriate because any violation would have

been harmless. Haddad could not be surprised by the Twitter profile because he created,

possessed, and controlled it. Any prejudice is low because the defendants produced the profile

before the discovery deadline, before Haddad noticed any depositions, before Haddad filed any

dispositive motions, and before Haddad filed this present Motion for Sanctions. There is no

disruption to the trial because no trial date has been set. Furthermore, the court does not find any

bad faith or willfulness on the part of the defendants because defense counsel was not aware of

the Twitter profile until November 18, 2014 and then produced it within one month.

Next, Haddad has argued that the defendants violated Rule 26(a) and (e) by failing to

disclose seventy-three pages of documents that included: (1) Assistant Principal Martin

Freeman's desk calendar; (2) Veracco's and Freeman's notes from the student interviews; and

(3) ten student questionnaire forms. Additionally, Haddad has claimed that the defendants failed

to produce the documents in response to his first set of requests for production. Specifically, he

stated they are responsive to:

> (i)     documents relating to [Haddad]'s November 8, 2011
>         assault at Lake Central High School, including documents

Lake Central School Corporation employees prepared relating to the assault (No. 3);

(ii)    documents relating to the individuals who were involved in the assault, the details of the assault, and the injuries sustained by [Haddad] and his assailant (No. 4);

(iii)    documents describing any previous peer harassment or bullying of [Haddad] at Lake Central High School or elsewhere (No. 7);

(iv)    documents reflecting any statements made to Defendants or to anyone Defendants knew concerning the facts surrounding the assault (No. 11); and

(v)    documents that memorialize, contain, or comment on statements made concerning the facts surrounding the assault (No. 12).

The first portion of the documents consisted of Freeman's desk calendar, and the defendants indicated it was not responsive to the discovery requests or required for disclosure under Rule 26(a). The defendants stated that the desk calendar included Freeman's daily notes regarding meetings, discipline issues, telephone calls, students' schedules, and daily tasks. Additionally, the defendants produced Freeman's desk calendar on December 17, 2014 after Haddad requested all documents relating to him on October 22, 2014 because the desk calendar included notes of calls and meetings with Haddad's family. Furthermore, the parties agreed to the December 17, 2014 date.

The court finds that Freeman's desk calendar was not responsive to the above discovery requests. Additionally, it is not clear that the defendants intended to use Freeman's desk calendar. Thus, they were not required to produce it with their initial disclosure pursuant to Rule 26(a). Once Haddad requested all documents relating to him, the defendants produced the calendar on an agreed upon date. The court does not find that the defendants withheld Freeman's calendar in bad faith and does not sanction them for failing to produce the calendar as part of their initial disclosure.

The remaining portions of the documents consisted of Veracco's and Freeman's notes from student interviews about the assault and ten student questionnaire forms. Both the administrators' notes and the questionnaires were responsive to Haddad's discovery requests. Furthermore, the documents should have been produced or disclosed pursuant to the Rule 26(a) initial disclosure requirement.

The defendants withheld documents from the initial disclosure on the basis of privilege because the documents were prepared in anticipation of litigation after Haddad commenced this matter. However, they did disclose documents that were withheld on the basis of privilege within a privilege log, but Veracco's and Freeman's notes from student interviews about the assault and ten student questionnaire forms were not disclosed as part of that privilege log.

The defendants indicated that they disclosed everything from their master file as part of their initial disclosure and that the above documents were not kept in the master file but were retained in personal files by the administrators. Defense counsel stated that it discovered that the above documents were not disclosed in November 2014 after Haddad issued discovery requests to the individual defendants on October 22, 2014. The defendants then supplemented their disclosure pursuant to Rule 26(e) on December 17, 2014 by producing a privilege log regarding the administrators' notes and the student questionnaires.

The court finds that the defendants timely supplemented their disclosure pursuant to Rule 26(e). They disclosed the missing documents on a date agreed to by the parties and the following month after discovering the documents had not previously been disclosed. Additionally, the defendants disclosed the documents before the fact discovery deadline, before Haddad noticed any depositions, before Haddad filed any dispositive motions, and before a trial date was set. Therefore, the court does not award Haddad sanctions pursuant to Rule 37(c)(1)

because the defendants timely supplemented their disclosure pursuant to Rule 26(e).  Although the defendants did not present an excuse for their failure to discover that the above documents were not disclosed, the court does not find that they purposely failed to disclose the documents or that they acted in bad faith.  Although the court understands Haddad's frustration, the defendants' duty to supplement did not arise until they learned that the documents were not disclosed previously.  *See* **Federal Rule of Civil Procedure 26(e)(1)(A)** ("A party . . . must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .").

Moreover, Haddad cited cases granting sanctions when the party either failed to disclose the documents at all or did so after discovery had closed and nearing the trial date.  *See **Davis v. Lakeside Motor Co., Inc.**,* 2014 WL 3341033, at *1 (N.D. Ind. July 7, 2014) (noting that the defendant filed trial exhibits that included documents that were not disclosed in discovery); ***Ablan v. Bank of America Corp.**,* 2014 WL 6704293, at *3 (N.D. Ill. Nov. 24, 2014) (finding that the plaintiffs failed to timely disclose CD-ROMS pursuant to Rule 26(e) when they produced the CD-ROMS after discovery had closed three months earlier).  Because Rule 37(c) requires the party to violate Rule 26(a) and (e) and the court found that the defendants timely supplemented their disclosure with a privilege log identifying the administrators' notes and the student questionnaires, the court will not award sanctions under Rule 37(c).  The Motion for Sanctions [DE 80] is **DENIED**.

Next, Haddad has requested the court to compel the defendants to produce the affidavits and questionnaires obtained from the School Corporation students.  A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books,

documents, or other tangible things." **Federal Rule of Civil Procedure 26(b)(1)**. For discovery

purposes, relevancy is construed broadly to encompass "any matter that bears on, or that

reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the

case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253

(1978)). Even when information is not directly related to the claims or defenses identified in the

pleadings, the information still may be relevant to the broader subject matter at hand and meet

the rule's good cause standard. *Borom v. Town of Merrillville*, 2009 WL 1617085, at *1 (N.D.

Ind. June 8, 2009) (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502

(S.D. Ind. 2003)); *see Adams v. Target*, 2001 WL 987853, at *1 (S.D. Ind. July 30, 2001) ("For

good cause, the court may order discovery of any matter relevant to the subject matter involved

in the action."); *Shapo v. Engle*, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001) ("Discovery is

a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond

to discovery requests or has provided evasive or incomplete responses. **Rule 37(a)(2)–(3)**. The

burden "rests upon the objecting party to show why a particular discovery request is improper."

*Gregg v. Local 305 Ibew*, 2009 WL 1325103, at *8 (N.D. Ind. May 13, 2009) (citing *Kodish v.

Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)); *McGrath v.

Everest Nat. Ins. Co.*, 2009 WL 1325405, at *3 (N.D. Ind. May 13, 2009) (internal citations

omitted); *Carlson Rests. Worldwide, Inc. v. Hammond Prof'l Cleaning Servs.*, 2009 WL

692224, at *5 (N.D. Ind. March 12, 2009) (internal citations omitted). The objecting party must

show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 255

F.R.D. 474, 478 (N.D. Ind. 2009) (citing *Graham v. Casey's Gen. Stores*, 206 F.R.D. 253, 254

(S.D. Ind. 2002)).  That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (citing *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006)) (internal quotations and citations omitted).  Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007) (examining *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)) (internal quotations and citations omitted); *see Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (explaining that the district court has broad discretion in supervising discovery).

Haddad has requested the court to compel the production of thirteen written statements and ten questionnaires obtained from students following the assault.  However, the defendants have claimed that the statements and questionnaires were created in anticipation of litigation and are protected by the work product doctrine.  "The work product privilege is distinct from and broader than, the attorney-client privilege." *Broadnax v. ABF Freight Sys., Inc.*, 1998 WL 474099, at *1 (N.D. Ill. Aug. 3, 1998).  The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:  (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their

substantial equivalent by other means. . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

*See* **Boyer v. Gildea**, 257 F.R.D. 488, 490 (N.D. Ind. 2009) (applying the Rule). To meet the qualified immunity from discovery based on Rule 26(b)(3), "a party claiming protection must show that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative." *Boyer*, 257 F.R.D. at 490 (citing Wright, Miller & Marcus, **8 Federal Practice & Procedure** § 2024 (3d ed.)). "The core of attorney work product consists of 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" **Menasha Corp. v. U.S. Dep't of Justice**, 707 F.3d 846, 847 (7th Cir. 2013).

The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial. **Caremark, Inc. v. Affiliated Computer Servs., Inc.**, 195 F.R.D. 610, 614 (N.D. Ill. 2000). The test for each document is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Caremark*, 195 F.R.D. at 614 (citing and quoting **Binks Mfg. Co. v. Nat'l Presto Indus., Inc.**, 709 F.2d 1109, 1118–19 (7th Cir. 1983). Precedent is clear that eventual litigation does not ensure protection of all materials prepared by attorneys—the "remote prospect of future litigation" does not suffice to bring the work product doctrine into play. *Binks*, 709 F.2d at 1120. Materials or investigative reports developed in the ordinary course of business do not qualify as work product; only if the material or report came into existence because of the

litigation or because of an existing articulable claim likely to lead to litigation can the doctrine apply. *Caremark*, 195 F.R.D. at 614.

Once a party has established a qualified work product privilege, the opposing party may overcome that privilege by showing a substantial need for the materials and an inability to obtain a substantial equivalent to the materials without undue hardship. **Rule 26(b)(3)**; ***Boyer***, 257 F.R.D. at 491. However, even with that showing, "the lawyer's mental processes are required to be protected from disclosure." *Caremark*, 195 F.R.D. at 614. Rule 26(b)(3) splits work product into "opinion" work product, which reflects a lawyer's mental processes, and "fact" or "ordinary" work product. ***Mattenson v. Baxter Healthcare Corp.***, 438 F.3d 763, 768–69 (7th Cir. 2006). "Both are generally protected and can be discovered only in limited circumstances." *Caremark*, 195 F.R.D. at 616 (citing ***In re Grand Jury Proceedings***, 33 F.3d 342, 348 (4th Cir. 1994)). However, opinion work product is more scrupulously protected than fact work product because it "represents the actual thoughts and impressions of the attorney." ***Grand Jury Proceedings***, 33 F.3d at 348.

The defendants have demonstrated that the written statements and questionnaires are documents and tangible things. Additionally, they have established that the documents were prepared in anticipation of litigation or for trial. In support, the defendants stated that Lake Central does not ordinarily obtain such documents during the course of student discipline and that the documents were prepared after Haddad commenced this matter to prepare a defense. Last, they demonstrated that administrators within the School Corporation, including some of the named defendants, obtained the written statements from the students and that they created the questionnaires that the students answered.

Haddad has argued that the student affidavits are not work product because they are a recitation of the facts by witnesses and not the mental impressions or legal theories of the defendants or their attorneys. *See Schipp v. General Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) ("[A]ny verbatim non-party witness statements are neither privileged nor work product and must be produced."); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) ("Affidavits are not normally protected by the work product doctrine for the very reason that an affidavit 'purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.'") (citing *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000)). Additionally, he noted that the affidavits were not created by the defendants or their attorneys but were created by the third-party witnesses. *See Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska 1994) ("What counsel are entitled to protect is *their* work and *their* thoughts and *their* analysis of the case, not the knowledge possessed by third parties.") (emphasis in original); *see also Murphy v. Kmart Corp.*, 259 F.R.D. 421, 428–31 (D.S.D. 2009) (reviewing the majority view that third-party affidavits do not qualify under the work product doctrine). Similarly, Haddad has argued that the student questionnaires were not work product because they were completed by third parties and did not reflect defense counsel's thought processes. *See Young v. California*, 2007 WL 2900539, at *1 (S.D. Cal. Oct. 1, 2007) ("Questionnaires completed by third persons are not work product.").

Although Haddad presented authority that non-party witness affidavits and completed questionnaires are not work product, none of the authority is controlling or from the Seventh Circuit. However, the defendants did not cite Seventh Circuit authority that directly considered this issue. The defendants cited the concurrence in *Hickman v. Taylor*, the preeminent work

product doctrine case, but the concurrence stated "[t]he question remains as to signed statements or those written by witnesses."  *Hickman v. Taylor*, 329 U.S. 495, 519, 67 S. Ct. 385, 397, 1947 A.M.C. 1 (1947) (Jackson, J., concurring).

Although Haddad presented persuasive authority that non-party witness affidavits and questionnaires do not qualify as work product, this court does not agree with those decisions. Rather, this court finds that the students' written statements and questionnaires qualify as fact or ordinary work product.  *See Murphy*, 259 F.R.D. at 431 (acknowledging that the non-party affidavits may qualify as ordinary or fact work product).  Moreover, this court finds that that reasoning is consistent with Seventh Circuit precedent on the work product doctrine.  *See Mattenson*, 438 F.3d at 767–68 ("The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy . . . ."); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (stating that the work product doctrine is intended "to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary"); *Jackson v. City of Chicago*, 2006 WL 2224052, at *4 (N.D. Ill. July 31, 2006) ("The work product doctrine reflects the strong public policy against invading the privacy of an attorney's course of preparation.") (citation omitted); *1100 West, LLC v. Red Spot Paint & Varnish Co., Inc.*, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007) ("If the Defendant wants to know what a potential witness knows, or what his or her testimony would be if deposed or called at trial, defense counsel . . . can conduct their own interview and obtain their own affidavit; they are not entitled to ride upon the coattails of Plaintiff's counsel.").

However, Haddad still may obtain the fact work product by showing a substantial need and that he cannot obtain the substantial equivalent of the documents without undue hardship. Haddad has shown that the documents are relevant because they contain first-hand observations of the assault. Additionally, he has stated that the information is not available by other means. Haddad indicated that he only was able to contact four of the thirteen students who signed affidavits or completed the questionnaires, despite repeated attempts via phone, email, Facebook, and personal visits. Furthermore, he has noted that three of the four witnesses he located did not remember the content of their affidavits and that the documents are necessary to examine and impeach the witnesses.

Haddad has argued that the lapse of time and the witness' fading memories render the evidence unavailable by other means even though the witnesses may be available for deposition. Moreover, he noted that the expense and burden of deposing all of the witnesses places an undue hardship on Haddad. However, the defendants have argued that Haddad has not presented a substantial need for the documents because any unavailability or fading memories were caused by his failure to diligently contact or question the students.

In reply, Haddad has indicated that the defendants have exaggerated his responsibility for any delay in contacting the witnesses. He has noted that the defendants did not provide all of the witness' names until January 17, 2013. Additionally, his prior counsel attempted to schedule depositions in mid-2013, but that the parties agreed to place discovery on hold until the court resolved the defendants' September 13, 2013 Motion to Compel. This court decided that motion on January 15, 2014, but Haddad stated that his prior counsel withdrew in mid-2014. Additionally, he did not retain his present counsel until August 28, 2014, who needed time to review the case file and then began contacting witnesses soon after October 21, 2014.

At this time, Haddad has failed to demonstrate that he cannot find a substantial equivalent of the documents without undue hardship. Generally, the cost or inconvenience of taking depositions is insufficient to meet the undue hardship requirement. *Murphy*, 259 F.R.D. at n.10 (citation omitted). Additionally, "assertions of possibly faded memories—as distinct from a witness's statements during the course of a deposition that she does not remember relevant facts—cannot suffice to overcome the work product privilege." *Sullivan v. Warminster Tp.*, 274 F.R.D. 147, 153 (E.D. Pa. 2011) (quoting *United States v. Urban Health Network, Inc.*, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19, 1993) (citations omitted)). A party satisfies the substantial need and undue hardship requirements when they depose the witnesses and they cannot recollect the events during the deposition, but mere surmise and conjecture that witnesses cannot recall the events is insufficient. *Eoppolo v. Nat'l R.R. Passenger Corp.*, 108 F.R.D. 292, 295 (E.D. Pa. 1985); *see Howard v. Seaboard Coastline R. Co.*, 60 F.R.D. 638, 639 (N.D. Ga. 1973).

Haddad has not demonstrated that he has taken formal measures to contact and question the witnesses. Therefore, he has not shown a substantial need and undue hardship at this time. However, he may demonstrate that if the witnesses cannot recall their statements or the events of the assault during a deposition or other formal discovery measure.

Haddad also indicated that the defendants withheld the affidavits and questionnaires pursuant to FERPA. Because the court has found those documents privileged under the work product doctrine, it will not address that issue. Furthermore, the defendants did not claim privilege under FERPA in their Response Brief. Therefore, that argument is waived.

"The great operative principle of Rule 37(a)(5) is that the loser pays." Charles Alan Wright *et al.*, *8B Federal Practice and Procedure Civil* § 2288 at 787 (3d ed. 2014). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution

and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." ***Rickels v. City of South Bend, Ind.***, 33 F.3d 785, 787 (7th Cir. 1994). Any loser may avoid payment by showing that his position was substantially justified. ***Rickels***, 33 F.3d at 787. The failure to disclose is sanctionable and properly remedied by an order compelling discovery. **Rules 37(a)(3)(B), (a)(4), (a)(5)**; ***Lucas v. GC Services, L.P.***, 226 F.R.D. 328, 329–30 (N.D. Ind. 2004). Federal Rule 37(a)(5)(A) states that the court shall require sanctions based upon the costs of seeking a motion to compel. *See **Stookey v. Teller Training Distribs., Inc.***, 9 F.3d 631, 637 (7th Cir. 1993) (citing the prior section number) ("Rule 37(a)(4) clearly allows for an award of the expenses incurred in obtaining an order to compel, including attorney's fees."). Sanctions under Rule 37(a)(5) are appropriate unless the movant filed the motion without attempting in good faith to obtain the discovery without court action, the party's nondisclosure was "substantially justified," or other circumstances make an expense award unjust. **Rule 37(a)(5)(A)**. In addition, Federal Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." ***Musser v. Gentiva Health Servs.***, 356 F.3d 751, 755 (7th Cir.2004); ***Salgado v. Gen. Motors Corp.***, 150 F.3d 735, 742 (7th Cir.1998); ***Engel v. Town of Roseland***, 2007 WL 2903196, at *6 (N.D. Ind. Oct. 10, 2007). Thus, Rule 37(a) is a fee-shifting rule, and the loser must pay unless it demonstrates that the movant filed the motion before attempting to obtain the discovery in good faith without court action, its position was "substantially justified," or other circumstances make an expense award unjust.

Considering the split in authority regarding the work product doctrine and non-party witness affidavits and the lack of controlling Seventh Circuit precedent, the court finds that an

expense award is unjust under the circumstances.  Each party was substantially justified in their positions.

Based on the foregoing reasons, the Motion for Sanctions [DE 80] filed by Haddad is **DENIED**, and the Motion to Compel Production of Student Affidavits and Questionnaires [DE 88] is **DENIED**.

ENTERED this 7th day of April, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge